KATHY L. RUSSELL and )
WILLIAM A. RUSSELL, )
)
    Plaintiffs/Appellees, )   Appeal No.
)   01-A-01-9505-CV-00200
v. )
)   Lawrence Circuit
THE CITY OF LAWRENCEBURG, )   No.  C-12941
)
    Defendant/Appellant. )

**FILED**

**Nov. 1, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT FOR LAWRENCE COUNTY

AT LAWRENCEBURG, TENNESSEE


THE HONORABLE JAMES L. WEATHERFORD, JUDGE

PAUL B. PLANT
P. O. Box 399
Lawrenceburg, Tennessee  38464
    ATTORNEY FOR PLAINTIFFS/APPELLEES


PATRICK A. FLYNN
P. O. Box 90
207 West 8th Street
Columbia, Tennessee  38402-0090
    ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AND REMANDED


SAMUEL L. LEWIS, JUDGE

# O P I N I O N

Defendant, City of Lawrenceburg, has appealed from the trial court's finding that the proximate cause of the accident in which plaintiffs suffered injuries and damages was the negligence of the City of Lawrenceburg's agent and employee, Officer George L. Barturen.

The trial court found that plaintiff Kathy Russell received injuries and damages which would merit a judgment substantially greater than $130,000.00. Nevertheless, she could only receive a judgment in the amount of $130,000.00 because Tennessee Code Annotated section 29-20-403 limits the liability of the City of Lawrenceburg. The court further found that plaintiff William A. Russell's loss of consortium claim entitled him to a judgment in the amount of $65,000.00.

Defendant's first issue is: "Whether the evidence, pursuant to de novo review, preponderates against the ruling of the trial court such that it requires a reversal of the trial court."

We review the trial court record in this non-jury case de novo with a presumption of correctness as to the findings of fact made by the trial court. Thus, a finding of fact will stand unless the evidence preponderates against it. Tenn. R. App. P. 13(d). "Any conflict in testimony requiring a determination of the credibility of a witness or witnesses is for the trial court and binding on this Court unless from other real evidence we are compelled to conclude to the contrary." *State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 282, 435 S.W.2d 803, 807 (1968).

2

We find nothing in the evidence in this case that pre-
ponderates against the findings of the trial court. The facts
clearly show that the negligence of the City of Lawrenceburg's
employee and agent was the proximate cause of this accident.

The accident occurred inside the City of Lawrenceburg.
Officer Barturen described the events leading up to the accident in
his incident report which he prepared on the day of the accident.
He was traveling on U.S. Highway 43 at 25 to 30 miles per hour.
Just before the accident occurred, he took his eyes off the road.
When he looked back up, he saw the back end of the plaintiffs' van
and applied his brakes. He was unable to stop and collided with the
rear of the van.

Officer Barturen told plaintiff William A. Russell, who was
a highway patrolman, that he was sorry and that the accident was
his fault. He stated that there was nothing he could do, that he
had no time to react, and that he had hit Mrs. Russell's van.
Also, Officer Barturen told the investigating officer, Trooper
Carroll, that the accident was his fault. He explained that he had
reached down for his microphone and then hit the van in the rear
knocking it into the tractor trailer. He stated that the length of
time between his looking up and seeing the van and the collision
was so short that he really did not notice whether the van had
lights on or not. It was just there and "bam." Officer Barturen
admitted that he never saw the tractor trailer until after the
accident and that he never saw Mrs. Russell strike the tractor
trailer before he struck her van in the rear. Finally, Officer
Barturen did not know if his vehicle left any skid marks at the
scene of the accident.

Plaintiff Kathy Russell testified that she was traveling
north on U. S. Highway 43. She recognized the vehicle driven by

3

Officer Barturen as an unmarked police car.  She noticed Officer Barturen changing lanes frequently apparently in an attempt to stay in the fastest lane.

Mrs. Russell stated that she saw the brake lights come on the tractor trailer in front of her.  She applied her brakes and began to come to a stop.  Although Mrs. Russell could not say if she was at a dead stop, she did testify that she was not getting any closer to the tractor trailer and that she was not going to hit the tractor trailer.  Mrs. Russell saw Officer Barturen in her rear view mirror and saw that he was looking down.  She realized that he was not going to see her in time to stop.  She testified that when Officer Barturen looked up she saw his face in her rear view mirror.  In her opinion, his face looked as if he suddenly realized that he was going to hit her and knew there was no way he could stop in time.  She further testified that Officer Barturen struck her vehicle in the rear and knocked her into the rear of the tractor trailer.  After the accident, Officer Barturen apologized to her stating that he was sorry and that it was all his fault.

Christy Holmstead testified that she was looking at the tractor trailer.  It appeared to be hit and lurch forward.  She did not recall hearing any impact, but she saw the van behind the truck.

Brent Franklin, the driver of the tractor trailer, testified that he was traveling north on Highway 43 when a car pulled out in front of him.  He had to apply his brakes to keep from hitting the car.  He did not feel the need to bring his truck to a complete stop to avoid hitting the car, but merely wanted to slow enough to let the car get out of his way.  After he saw that he was going to miss the car, he let off his brakes and started to change gears.  As he changed gears, he felt a bump.  He looked in his mirror and

4

saw glass flying. He realized that someone had hit him. Further, he testified that he asked Officer Barturen if he had hit Mrs. Russell and Officer Barturen replied "evidently so."

Mrs. Russell's and Officer Barturen's immediate recollections of the accident were that Officer Barturen's car struck Mrs. Russell's van in the rear and knocked it into the rear of the tractor trailer. The record contains no testimony that would contradict these recollections. In addition, the physical evidence supports the trial court's findings. The investigating officer, Trooper Carroll, did not find any skid marks, debris, or pavement gouges worthy of notation on his accident report. He also testified that after the accident there was a distance of two or three feet between the van and the tractor trailer and six to eight feet from the rear of the van to the front of Officer Barturen's police car. Based on these observations, Officer Carroll testified that the accident scene was consistent with the descriptions given to him by Mrs. Russell and Officer Barturen.

After review of this record, we are of the opinion that the evidence does not preponderate against the finding of the trial court that the proximate cause of the accident was the negligence of Officer Barturen and that the unidentified car was not in any way the proximate cause of the accident. This issue is without merit.

Defendant's second issue is: "Whether the evidence preponderates against the trial court's finding that the plaintiffs are entitled to a judgment of $130,000.00."

Tennessee Code Annotated section 29-20-403 provides as follows:

Minimum limits of not less than one hundred thirty

5

> thousand dollars ($130,000.00) for bodily injury or
> death of any one (1) person in any one (1)
> accident, occurrence or act and not less than three
> hundred fifty thousand dollars ($350,000.00) for
> bodily injury or death of all persons in any one
> (1) accident, occurrence or act, and in cases
> arising out of the ownership, maintenance and use
> of automobiles to a limit of not less than fifty
> thousand dollars ($50,000.00) for injury to or
> destruction of property of others in any one (1)
> accident, occurrence or act. The provisions of
> this subdivision apply to any action arising on or
> after July 1, 1987;...

Tenn. Code Ann. § 29-20-403(b)(2)(A)(Supp. 1994). This provision simply means that a governmental entity is not liable to a plaintiff injured in any one act or occurrence for more than the amount set forth in the statute. It does not, however, restrict the plaintiff's damages to that amount.

The trial court was of the opinion that it could not award total damages in excess of $130,000.00; therefore, it awarded a total of $130,000.00 to plaintiffs. After oral argument, this court held that the trial court's judgment was not final because it awarded damages to the plaintiffs together and did not designate the amount of judgment awarded to either plaintiff. To cure the defect, this court remanded the case to the trial court for the entry of a proper judgment. On remand, the trial court reiterated its judgment of $130,000.00 for plaintiff Kathy Russell and entered judgment of an additional $65,000.00 for plaintiff William Russell. We are of the opinion that the evidence does not preponderate against either of these awards.

Doctors have treated Mrs. Russell for gall bladder problems since the late 1970's and early 1980's. Mrs. Russell has also suffered from pancreitis and diabetes. In 1980 or 1981, she had a portion of her pancreas removed. Later, in 1982, doctors performed additional surgery and removed 90% of her pancreas. Despite her diabetes, Mrs. Russell rehabilitated herself after the second pancreas surgery to resume normal activities. At the time of the

6

accident in 1990, she was suffering from no physical problems which limited her activity in any way. She camped, played badminton and basketball, was able to jump on trampolines, swim, and enjoy riding a knee board pulled by motor boat.

Prior to the accident, Mrs. Russell enjoyed a spontaneous personal relationship with her husband. This relationship was a very important part of their married life. Now, their personal relationship is practically nonexistent. Since the accident, Mrs. Russell has spent most of her days lying in bed. She gets up only to go to the bathroom and to take an insulin shot. When she is able to find a comfortable position with the use of heating pads, she must lie as still as possible. The Russells no longer sleep in the same bed because Mrs. Russell's back hurts and she must get up throughout the night. As a result, if they sleep in the same bed, Mr. Russell is unable to get adequate rest in order to work the next day. Mrs. Russell is not able to sit for long periods of time because she is in constant pain. She does not eat regular meals, but drinks Ensure, because she does not have an appetite. In addition to her pain, Mrs. Russell feels guilty for not being able to contribute more to her family than she does. Mrs. Russell last worked in June 1990, two and one half months after the accident. She left her job because she was in pain and felt she was not properly carrying out the duties of her job.

Dr. McCohn performed disk surgery on Mrs. Russell's back in October 1990. After the operation, Mrs. Russell was in constant pain. Only a few days after her discharge, an ambulance had to take her back to the hospital. On 16 October 1990, Dr. McCohn performed a second operation to remove a piece of bone which was compressing a nerve.

Plaintiff Mrs. Russell has not been pain free since the

7

accident. She can clearly distinguish the pain associated with the pancreitis from the pain associated with the automobile accident. Since the surgery, the pain has steadily increased to the same intensity as she experienced before her back surgery. She continues to have contact with Dr. McCohn's office, but she attempts to limit her trips to the doctor because of the extreme pain involved in travel. The only relief Mrs. Russell finds for her pain is to lie on her side with heating pads stuck under her and wrapped around her tightly. Unfortunately, she is able to remain in this position for only a short period of time. She has not found any other position to ease her pain.

Mrs. Russell suffered significant physical impairments and monetary loss as a result of the accident. At the time of the accident, she was 37 years of age. On the date of trial, she was 41. Dr. McCohn's opined that Mrs. Russell suffered a 12% disability of the body as a whole because of the injury she received in the accident. She incurred medical bills of $29,511.00, and her prescriptions exceeded $2,007.00. Four years and eighteen weeks passed from the date Mrs. Russell last worked to the date of trial. Using a minimum wage of $4.25 an hour and a forty hour work week, Mrs. Russell would have lost earnings of approximately $38,000.00. Prior to the accident, she had a life expectancy of 41.7 years, and at the time of trial, she had a life expectancy of 38 years. If we assume that before the accident and her resulting injuries Mrs. Russell would have worked until she qualified for social security, at age 62, and that she would have made only minimum wage for her entire work life, her loss of earning capacity from the date of trial would have exceeded $185,000.00. Finally, Mrs. Russell's vehicle, which was valued at $13,505.00, was a total loss.

We are of the opinion that the evidence in the record clearly supports a judgment in excess of $130,000.00 for Mrs.

8

Russell and that the $65,000.00 judgment in favor of Mr. Russell is well within the preponderance of the evidence. This issue is without merit.

Defendant's third issue is: "Whether the trial court erred in failing to assign liability to the 'phantom vehicle' and to Mrs. Russell...."

We are of the opinion that the trial court's finding of liability in this case is supported by the preponderance of the evidence. The driver of the tractor trailer testified that he had his vehicle under control and that there was no danger of him colliding with the "phantom vehicle." He also testified that when he felt the impact behind him he had already begun to gear down and move forward. Plaintiff Mrs. Russell testified that she had her vehicle under control and that the distance between her vehicle and Mr. Franklin's truck was not closing when Officer Barturen's car struck her van in the rear. Officer Barturen testified that when he looked back up he was too close behind Mrs. Russell's van to stop without striking it. Further, he told the investigating officer that "he hit the van in the rear end and knocked it into the tractor/trailer."

The proximate cause was Officer Barturen's negligence in looking down and taking his attention away from the proper operation of his automobile. We find no negligence on the part of Mrs. Russell. In addition, we are of the opinion that the evidence does not show that the driver of the "phantom automobile" was guilty of negligence. In any event, it was for the trier of fact to determine such negligence. The trial court resolved the issue finding that the phantom party was without fault. The evidence does not preponderate against the trial court's finding that neither the plaintiff nor the driver of the phantom automobile

9

contributed to the accident.

Therefore, it results that the judgment of the trial court is in all things affirmed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to the defendant/appellant, City of Lawrenceburg.

_____
SAMUEL L. LEWIS, JUDGE


CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, J.